AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Western District of Texas

FILED
MAY 1 7 2019
CLERK, U.S. DISTRICT CLERK
WESTERN DISTRICT OF TEXAS
BY _____ DEPUTY

| United States of America | ) |
|---|---|
| v. | ) |
| Rodrigo CORTES-Gutierrez | ) Case No. SA:19-MJ-00555 |
| Defendant(s) | ) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of   May 16, 2019   in the county of   Bexar   in the
Western District of   Texas  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 841(a)(1), 841(b)(1)(A)(ii), and 846 | Attempted Possession of a Controlled Substance, to wit: 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, |
|  | Penalty: minimum 10 years in prison to life, 5 years PRS, $10,000,000 fine, $100 special assessment |
| 18 U.S.C. 1956(a)(3)(A) | Whoever, with the intent to promote the carrying on of specified unlawful activity; conducts or attempts to conduct a financial transaction involving property represented to be the proceeds of sepcified unlawful activity, or property used to conduct or facilitate specified unlawful activity |
|  | Penalty: maximum 20 years in prison, fine equal to the value of the monetary instruments involved, 3 years PRS, $100 special assessment |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT

☑ Continued on the attached sheet.

_____
Complainant's signature

Paul Muriel, Special Agent
Printed name and title

Sworn to before me and signed in my presence.

Date:   May 17, 2019                             _____
                                                  Judge's signature

City and state:   San Antonio, Texas            Hon. Elizabeth Chestney, U.S. Magistrate Judge
                                                  Printed name and title

Maximum Penalties:
2 years confinement, $250,000 Fine or Both; 1 year supervised release, $100 mandatory special assessment

## AFFIDAVIT

Being duly sworn, I declare that the following is true and correct to the best of my knowledge.

My name is Paul B. Muriel, and I am a Special Agent with the United States Immigration and Customs Enforcement's, Homeland Security Investigations and have been so employed for approximately sixteen years. I am authorized by the United States Department of Homeland Security to enforce the Customs and Immigration Laws and Regulations of the United States or any other Laws or Regulations designated by the Attorney General, Treasury Secretary, or their successor, the Secretary of the Department of Homeland Security.

On May 1, 2019, Rodrigo CORTES-Gutierrez (hereinafter referred to as "CORTES"), met with two Homeland Security Investigations (HSI) undercover agents at a local restaurant to discuss the transportation of narcotics from the border town of Laredo, Texas to the San Antonio area.

The undercover agents expressed their interest in having CORTES, a licensed pilot, to transport the narcotics using his aircraft for the purpose of circumventing the Border Patrol checkpoint and law enforcement. The undercover agents, acting as drug dealers, were willing to pay CORTES $1,200 per "cuadro," a Spanish slang used to describe a kilogram of narcotics. The undercover agents stated that they currently had 20 kilograms in Laredo ready for transport. CORTES stated that he wanted to transport at least 40 kilograms to make the trip worth it.

CORTES stated that his plane was in need of a new engine. CORTES stated that he knew how to handle his business and avoid inspections. CORTES then brainstormed ideas to transport the narcotics to the San Antonio area and stated that in order to move anything by airplane, it would have to be done his way.

CORTES stated that he didn't want anyone to know what aircraft he would be flying. CORTES stated that the sooner he could come up with the money, the sooner it would be fixed and used.

CORTES told the undercover agents that if they bought 5 trucks (semi-tractors) for $125,000 from his (CORTES'S used car lot), CORTES could re-sell them again, to another buyer as a method to launder the funds. The undercover agents asked CORTES how he would handle cash brought to him. CORTES stated he would make false business contracts. CORTES then went on to explain that the semi-trucks at his business are actually owned by another person for whom he laundered money at a 5% fee.

CORTES continued to tell the undercover agents that his transportation fee would be based on the amount of "product" moved. CORTES told the undercover agents in Spanish, "todo sale con madre buey, pero necesito hacerlo yo" (everything will come out awesome dude, but I'll have to do it myself).

CORTES asks the undercover agents if the packages are wrapped in a manner to avoid detection by X-rays. The undercover agent tells CORTES that the packages have aluminum wrappings as well as grease so that the K-9 narcotics dogs could not detect anything.

CORTES explained to the undercover agents that he is an "intermediary" and that the vehicles in his lot are really owned by someone else. CORTES stated that the business is already "perfect" because there are "no questions" on his transactions. CORTES continued to explain how he could use the car lot to launder money by reselling the trucks. CORTES explained that the undercover agents would lose about $5,750 per truck.

CORTES stated that his car lot is actually conducting business through the sale of trucks because they are worth more than cars, so moving larger amounts of money is easier.

On May 14, 2019, CORTES met with an undercover agent to discuss the transportation of narcotics from to the San Antonio area. The undercover agent explained to CORTES that 80 "squares of white" (slang for 80 kilos of cocaine) were located in Laredo with another 20 kilos expected to arrive for a total of 100 kilos waiting to be transported to the San Antonio area. The undercover agent told CORTES that he also had cash to begin the venture, even though it would take two to three months for the aircraft to be fixed.

The undercover agent asked CORTES if he could help with the transportation of the 100 kilos currently in Laredo. CORTES stated that he would have to think about the best way to do it because he had been looking at routes.

CORTES showed the undercover agent possible aviation routes from airports in South Texas and discussed the possibility of picking up the product in Brownsville, Texas. CORTES told the undercover agent that we would have to drive through the entire area to see how it looks.

The undercover agent told CORTES that he had $60,000 to get started. The $60,000 represented half of the transportation fees for the 100 kilos. The rest would be paid when the 100 kilos arrive in San Antonio.

The undercover agent told CORTES that $1,200 per kilo was a just price to pay for transportation fees and that for moving 100 kilos, CORTES would be getting a total of $120,000. The $60,000 would be an upfront payment. CORTES told the undercover agent that he would be ready to begin transporting by aircraft within the next 3 months, "to do it right." The undercover agent and CORTES agreed to the exchange of the $60,000 for Thursday, May 16, 2019.

CORTES told the undercover agent that with this money, he could fix the engine on his plane in order to begin transporting. CORTES stated that if he had to buy a small airplane like a "Cessna" in order to start working, he would do it.

CORTES told the undercover agent that it would be easier to fly from McAllen rather than Laredo. CORTES told the undercover agent that there was an airport in South Padre Island and that there was never anyone at that airport. CORTES stated that he owned a condo in South Padre Island and trips to South Padre Island airport would be less likely to be scrutinized.

CORTES suggested that the money exchange for Thursday take place inside the RV located on his car lot. The undercover agent told CORTES that it would be better to meet in a public place. CORTES stated that in the event law enforcement approached them after the $60,000 exchange, he would say the money was from the sale of two semi-trucks. CORTES also stated that he would bring receipts for the sale of two trucks.

On May 16, 2019, CORTES met an undercover agent inside a local restaurant. The undercover agent told CORTES that the $60,000 cash transportation fee was in a bag on the rear floorboard behind the driver's seat. The undercover gave CORTES the keys to the car so that CORTES could transfer the bag containing the $60,000 to CORTES' vehicle. CORTES left the restaurant and got into a silver Volvo and parked next to the undercover agent's vehicle. CORTES then unlocked the undercover vehicle and opened the rear door on the driver's side and retrieved the bag containing the $60,000.

CORTES opened the bag to examine its contents. CORTES then closed the door and opened the door to the silver Volvo when CORTES was apprehended by law enforcement officers.

When apprehended CORTES stated that the money was for the purchase of trucks and produced a folded hand-written receipt for four trucks on white printer paper from his pocket, as he previously told the undercover what he would say if he was approached by law enforcement.

Based on the above, I submit that there is probable cause to believe that on or about May 16, 2019, in the Western District of Texas, Defendant Rodrigo Cortes-Gutierrez attempted to possess with intent to distribute a controlled substance involving 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II Controlled Substance, in violation of Title 21, United States Code Sections, 841(b)(1)(A)(ii) and 846, all in violation of Title 21, United States Code, Section 841(a)(1), and conducted or attempted to conduct a financial transaction involving property used to conduct or facilitate a specified unlawful activity, with the intent to promote the carrying on of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(3)(A).

Paul Muriel, Special Agent
Homeland Security Investigations

Subscribed and sworn before me the 17th day of May 2019.

Honorable Elizabeth Chestney
United States Magistrate